

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Adam R. Johnson, Director
Department of Public Welfare,
American-Statesman Building
Austin, Texas

Dear Mr. Johnson:

Opinion No. O-1205
Re: (a) The State of Texas may
not by legislative enactment
destroy or impair its obliga-
tions; (b) The Legislature
may enact a valid statute pre-
scribing a reasonable time
within which owners of past
due obligations of the State
may present the same for pay-
ment, or forever be barred.

Your letter of recent date addressed to Attorney
General Mann reads as follows:

"With further reference to the opinion from
your Department #O-702, copy of which is attached,
concerning the obligation or liability of the
State of Texas on certain outstanding commitments,
can those commitments be voided by Legislative act-
ion, and if so what would be the required legal pro-
cedure?

"As it is quite important that the legal status
of these claims be determined we will appreciate
your opinion in the premises as early as possible."

The commitments referred to are fully described in
our opinion No. O-702 and in which you were advised that all
outstanding orders issued by the Texas Relief Commission to
merchants for merchandise deliverable to relief clients which
had been filled by merchants, but not presented to the com-
mission for payment, were valid obligations of the State of
Texas. You were further advised in said opinion that all

checks issued by the Commission to divers persons in payment
of obligations of the Commission to them, but which checks
had never been presented for payment to the bank on which they
were drawn, were also valid obligations of the State.

You now desire to know if those obligations may be
voided by legislative enactment. It was held in the case of
Danolds v. State of New York, 89 N. Y. 36, 42 Am. Rep. 277,
that a state may not by legislative fiat destroy or impair
its obligations. In the opinion of the court it is said:

"It (the State) may repudiate its contracts, it
may refuse to perform them, but its sovereign right
to destroy or impair the obligation of them is limit-
ed by the Federal Constitution. It may refuse to re-
spond in damages and leave a claimant without any
remedy, as it may refuse to pay its bonds; but the ob-
ligation remains. No legislative fiat can destroy or
impair that.

"It has been long settled so as to be beyond con-
troversy, that the constitutional provision which de-
nies to the State the power to pass laws impairing the
obligation of contracts applies to all contracts made
within its limits, as well contracts made by the State
as those made by individuals. Dartmouth College v.
Woodward, 4 Wheat 519; Fletcher v. Peck, 6 Cranch, 87,
137; State v. Wilson, 7 id. 164."

In 9 Tex. Jur. p. 841, it is said:

"The enactment of laws impairing the obliga-
tion of contracts is forbidden by section 16 of
Article 1 of the constitution of Texas, and by
section 10 of article 1 of the constitution of
the United States. The limitation thus imposed
is emphatic, unambiguous and without exception; it
applies alike to all contracts, and protects all
obligations of contracts from destruction or im-
pairment by subsequent legislation. The provis-
ion of the federal constitution prohibiting the
passage of laws impairing the obligation of con-
tracts applies to the constitutional provisions
adopted by states as well as to their statutory
enactments."

The 36th Legislature passed a law authorizing and directing the Comptroller "to appoint and contract with some suitable person or persons whose duty it shall be to look specially after, sue for and collect the taxes" (inheritance taxes) provided for by Chapter 160, Revised Statutes, fixed the maximum compensation to be paid to such person or persons at 10% of the amount of taxes collected.

The Comptroller, in obedience to this direct legislative command, made a contract with one Smith and others for a period of two years and agreed to pay them the maximum compensation allowed by law. Within a short time after this contract was made the 35th Legislature amended the statute and omitted therefrom the provision authorizing such contracts. Smith and his associates ignored the amendment and continued to perform their contract with the Comptroller. Several months after the effective date of the amendment and during the life of their contract, they were instrumental in causing to be paid to the Tax Collector of Grayson County certain inheritance taxes. The collector paid to them 10% of the amount of taxes so collected, as he was authorized to do by both the statute and contract. The Comptroller, acting on the advice of the Attorney General, refused to credit the collector's account with the amount so paid. Mr. Johnson, the tax collector, applied to the Supreme Court for a writ of mandamus to compel Hon. Lon A. Smith, Comptroller, to allow the credit insisted upon. The application was granted and in doing so, the court said:

"The State, like individuals, especially when entering into private contracts, must first well consider what contracts it will enter into or authorize with the view of having them performed according to their terms.

"When the State becomes a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of individuals.

"The contract entered into between the Comptroller and Smith and associates, under the authority of Article 7401, as amended by the 35th Legislature, did not create a public office, but was a contract which is protected by Section 16, Article 1, of the Constitution of Texas which provides that no 'law impairing the obligation of contracts shall be made' and also by Section 10, Article 1, of the Constitution of the United States."

The court then cites numerous authorities, one of which is the Dartmouth College case heretofore cited. Johnson v. Smith, 122 Tex. 822, 340 S. W. 1813.

The effect of the opinion is that the Legislature cannot impair the obligations of the State arising out of a contract made by legislative authority between it and an individual or terminate prior contracts legally entered into under its authority.

The obligations of the State under consideration are undoubtedly founded on contracts, legally made, under legislative direction and sanction, between it and the respective parties to whom the obligations are due. Their rights are fully protected by both the State and Federal Constitutions against impairment by legislative action.

You are, therefore, respectfully advised that the Legislature may not void these obligations.

We will now consider the question of whether the Legislature has the authority to pass a valid statute providing for a reasonable time in which the owners of these obligations may present the same for approval and payment or payment, and declaring that all such obligations not so presented within such time shall be forever barred from payment. It is very probable that this is the information most desired by you in view of our opinion No. O-702.

It has been said:

"The object of a statute of limitation in requiring the complaining party to assert his claim within a reasonable time is to suppress fraudulent and stale claims from springing up at great distances of time and surprising the other party after evidence which would sustain a defense has been lost." Southern Surety Co. of New York v. First State Bank (Civ. App.) 54 S. W. (2) 825, error refused.

There is no constitutional inhibition against the State interposing a statute of limitation as a defense against a claim presented against it. Such a defense was sustained by the Supreme Court in the case of Power v. State, 41 Tex. 102. The right of the State to insist upon such a plea seems to have been recognized by the court in State v. Elliott, 212 S.W. 695, error refused. In that case it was held that limitation

did not begin to run in favor of the State and against a claimant until the latter was given permission to sue the State. The plaintiff's cause of action was one sounding in tort. It was, therefore, imperative that he first obtain permission from the Legislature before he could have his cause adjudicated in the courts. In such cases limitation should not run in favor of the State until the claimant could have that privilege. After permission to sue has been granted, the statute apparently begins to run in favor of the State.

While the Legislature is inhibited by both the State and Federal Constitutions from "impairing the obligation of contracts" the courts have drawn a distinction between the obligation of a contract and the remedy which is given by the Legislature to enforce that obligation. The Legislature may properly enact a statute which modifies a remedy, provided that some substantial remedy be in fact left. 6 Tex. Jur. pp 844-845.

"Statutes of limitation prescribing the time within which a particular right may be enforced relate to remedies only, it is well settled by the authorities that the Legislature has the power to increase or diminish the period of time necessary to constitute limitation; provided such change is made before the right has become barred under the pre-existing statute of limitation." Cathey v. Weaver, 193 S. W. 491.

When the period of limitation is shortened by legislative enactment, parties to existing contracts must be given a reasonable time in which to enforce their contracts after the change in the law takes effect. Farmers' Life Ins. Co. v. Wolters, (Com. App.) 10 S. W. (2d) 698. Subject to the foregoing rule, the Legislature may prescribe periods of limitation for cases which theretofore were not subject thereto. 28 Tex. Jur. pp. 70, 80. The question of what is a "reasonable time" is one of fact to be determined by the court. Cathey v. Weaver, (Sup. Ct.) 242 S. W. 447, 450, and authorities there cited.

The case of Power v. State, supra, was one where the Congress of the Republic of Texas, December 14, 1837, gave permission to a certain class of claimants and their assigns to sue the Republic to establish, if they could, their claims against it. The plaintiff, as an assignee of his father who came within the class permitted to sue, filed his suit in 1872, and twenty years after the death of his father. The Attorney

General interposed as a defense, among others, the plea of limitation which was sustained by both the trial and Supreme Court. In this connection it will be stated that the Act of Congress did not limit the time in which such suits might be filed.

In the case of Parker et al v. Buckner et al, (Sup. Ct.) 2 S.W.746, a statute, requiring certain claims to be presented to the Commissioners Court within a certain time or be forever barred, was held valid. Section 4 of the Act read:

"That all claims such as are mentioned in sections 1 and 2 of this act, which are not presented to the several commissioners courts within six months after the act goes into effect, shall be forever barred."

The court held that section 4 did not impair the obligation of a contract; that the legislature may change or modify the remedy for the enforcement of a contract; and, within certain bounds, limit the time for its exercise. The court also said:

"We see nothing in this section to restrict the power of the legislature to limit, within reasonable bounds, the time for claimants to avail themselves of any remedy that might be afforded by law for the collection of these claims."

The Legislature of the State of Arkansas in 1901 passed a statute prescribing a period of limitation within which all state bonds more than eighteen months past due should be presented for payment and redemption. The statute provided for certain publications of notice and declared that all bonds not presented for payment and redemption within six months from the first day of publication "shall thereafter be null and void and nonpayable out of the treasury."

The statute was held valid by the Supreme Court of Arkansas in the case of Tipton v. Smythe, 94 S.W. 678. The court held that the statute did not deprive a holder of a bond, not presented for payment within the statutory period, of his property without due process of law; did not, under the facts of the case, impair the obligation of contracts; merely prescribed a period of limitation within which outstanding past due bonds of the state might be presented for payment and redemption; and that the proscribed period of limitation, six months, was reasonable.

We now have statutes of limitation which relate to the time in which claims against the State must be presented or be forever barred. Some of them are Articles 1035 and 1036, Code of Criminal Procedure, as amended by Chapter 143, Acts of the Regular Session, Forty-second Legislature, and Article 7065a-13, Sec. c, Vernon's Ann. Tex. Statutes.

Article 1035 authorizes the Comptroller to audit and approve claims presented to him by certain public officers for particular services rendered, and to draw his warrant on the State Treasury for the amount found by him to be due the claimant. The article contains this clause:

"All such claims or accounts not sent to or placed on file in the office of the Comptroller within twelve (12) months from the date the same becomes due and payable shall be forever barred."

Article 1036 provides for the payment by the State of certain fees and mileage to any witness who is required by law to appear before any court or grand jury out of the county of his residence to testify in a felony case; prescribes the procedure to be followed by the witness in obtaining his claim for such fee and mileage and the presentation thereof to the Comptroller for payment. It contains substantially the same limitation clause found in Article 1035, quoted above.

Article 7065a-13 provides for the refunding by the State to a purchaser of motor fuel, not used for certain purposes, of the tax paid thereon. It requires a claimant for such refund to present his claim to the Comptroller for payment within six months from the date of purchase of the motor fuels upon which his claim is founded, and not thereafter.

You are advised that it is the opinion of this department that the Legislature may enact a valid statute prescribing a reasonable time within which the owners of the obligations of the State under consideration, all of which are past due, may present the same for payment, or forever be barred.

Hoping that we have satisfactorily answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By   Bruce W. Bryant
     Assistant

APPROVED SEP 16, 1939

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS
BWB:bp

APPROVED
OPINION
COMMITTEE
BY